IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      *Plaintiff*,<br><br>v.<br><br>SEAN MCHENRY,<br><br>      *Defendant.* | Criminal No. 2:19-cr-321 - 2<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

William S. Stickman IV, United States District Court

  A Grand Jury returned a one-count indictment charging Defendant, Sean McHenry ("McHenry"), and eighteen of his co-defendants with conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. (ECF No. 1). Following an arraignment and detention hearing on October 29, 2019, Magistrate Judge Patricia L. Dodge detained McHenry pending trial. (ECF Nos. 140 and 479).[1] On May 18, 2020, McHenry filed a Petition to Revoke Order of Detention and brief in support thereof, which he characterizes as an appeal of his October 29, 2019 detention order, requesting that he be

---

[1] Although the minute entry for the detention hearing was docketed on October 30, 2019, the actual Order of Detention was not docketed until May 18, 2020. (ECF Nos. 140 and 479). The Court recognizes that the issuance of written orders is a judicial necessity. However, given the fact that McHenry and counsel were present at the detention hearing and McHenry is well aware of the fact that he is detained, no harm or inequity has arisen through the failure to timely docket the Order of Detention. The minute entry specifically stated, "[t]he courts finds, with regards to detention, that there are no conditions of release that can be imposed. The defendant is to be detained pending trial." (ECF No. 140). At the hearing, in the presence of McHenry and his counsel, Judge Dodge clearly articulated her reasons for detention. (ECF No. 495, pp. 33-37). All this said; the Court is giving McHenry the benefit of the doubt and treating his present petition as a timely appeal from the October 29, 2019 detention order.

1

released on bond because he is not a flight risk, he does not have a history of violent conduct, and he does not pose a danger to the community. Furthermore, McHenry posits that he is at increased risk of COVID-19 virus infection due to his detention at the Allegheny County Jail ("ACJ"). (ECF Nos. 477 and 478). The United States of America ("the Government") filed a Response opposing McHenry's request for release. (ECF No. 483). McHenry filed a Reply noting that he would appear for all court proceedings and arguing that he did not pose a threat to the community. (ECF No. 502, pp. 4-5).

The Court has undertaken a *de novo* review of the transcript from the detention hearing, as well as the parties' arguments and the evidence of record.[2] Having conducted its independent review of the record and considered the arguments proffered by the parties, the Court hereby AFFIRMS the Order Setting Defendant's Conditions of Release. (ECF No. 26). McHenry shall remain detained pending trial, and his Petition to Revoke Order of Detention (ECF No. 477) is DENIED.

## STANDARD OF REVIEW

The parties do not dispute Magistrate Judge Dodge's finding that a rebuttable presumption arises in this case given the grand jury's return of an Indictment charging McHenry with violations of the Controlled Substances Act, 21 U.S.C. § 801, *et. seq.*, for which the maximum possible sentence is life imprisonment and, therefore, exceeds a term of incarceration of not more than 10 years. (ECF Nos. 479 and 495). By virtue of the grand jury's return of an Indictment, probable cause exists that McHenry committed these offenses. *See United States v.*

---

[2] A District Judge reviews the decision of a Magistrate Judge granting or denying bail *de novo*. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985). It retains the discretion to make its determination after reviewing the record developed before the Magistrate Judge or to accept additional evidence from the parties and rule on an expanded record. *See* 18 U.S.C. § 3142(f)(2)(B). The Court has determined that a hearing is unnecessary for it to resolve this matter.

*Suppa*, 799 F.2d 115, 119 (3d Cir. 1986). Therefore, a rebuttable presumption has been established that no condition or combination of conditions will reasonably assure the appearance of McHenry as required and reasonably assure the safety of the community from the commission of further crimes by him. *See* 18 U.S.C. § 3142(e)(3).

To rebut this initial presumption, the burden was upon McHenry to produce some credible evidence that he will appear and will not present a threat to the community. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). Even if McHenry satisfied his initial burden of production to rebut the presumption against release, it does not completely eliminate the presumption favoring detention from further consideration; rather, it remains a factor to be considered among those weighed by the Court. However, rebuttal of the initial presumption against detention shifts the burden to the Government to demonstrate by clear and convincing evidence that McHenry is a danger to the community and/or by the lesser standard of a preponderance of the evidence that McHenry is a flight risk. *See United States v. Perry*, 788 F.2d 100, 115 (3rd Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

In making its determination of whether there are conditions or a combination of conditions of release that will reasonably assure the appearance of McHenry and the safety of the community, the Court must weigh the evidence in light of the four factors set forth in 18 U.S.C. § 3142(g). The four factors are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of McHenry; and (4) the nature and seriousness of the danger to any person or the community that would be posed by McHenry's release. 18 U.S.C. § 3142(g).

The Court must, therefore, make the initial determination of whether McHenry has proffered sufficient evidence to rebut the initial presumption against pretrial release. If so, the Court must determine whether the Government satisfied its burden of demonstrating by clear and convincing evidence that McHenry poses a threat to the community or, by a preponderance of evidence, that he poses a flight risk.

## ANALYSIS

After consideration of the evidence and arguments of counsel, the Court concludes that McHenry failed to rebut the initial presumption of detention and no condition or combination of conditions would reasonably ensure the safety of the community if he is released. McHenry failed to produce any credible evidence that he will not present a threat to the community This alone warrants continued detention. However, the Court's examination of the materials before it leads to the conclusion that, even if McHenry had rebutted the presumption of detention, the Government, by clear and convincing evidence, persuaded it that no condition or combination of conditions would reasonably ensure the safety of the community if McHenry were to be released.[3]

As to the nature and circumstances of the offense charged and the weight of evidence, these factors favor pretrial detention.[4] It is alleged that investigators conducted controlled

---

[3] The Court is cognizant of the fact that the United States Probation Office determined that no combination of conditions would reasonably assure the appearance of McHenry as required and the safety of the community, and that it requested he be detained pending trial. (ECF No. 483, p. 3). Of particular note to the Court was that office's reasons why McHenry poses a risk of danger, which were: nature of the instant offense; prior arrests and convictions; substance abuse history; criminal history; criminal activity while under supervision; pattern of similar criminal activity; and, safety concerns for the community. (ECF No. 483, p. 4).

[4] The need for the Court to consider the weight of the evidence as required under the Bail Reform Act, 18 U.S.C. §§ 3142(g)(1),(2), does not subvert McHenry's presumption of innocence. *See* 18 U.S.C. § 3142(j). In no way is the Court presuming McHenry's guilt, but,

purchases of heroin, fentanyl, and furanylfentanyl with McHenry from September of 2018 through January of 2019. (ECF No. 495, pp. 8-10, 12-13). Through interceptions of McHenry's telephones and those telephones belonging to his codefendants, conversations were recorded wherein McHenry discussed trafficking heroin. (ECF No. 495, pp. 10-17). McHenry was identified by investigators as the leader in this heroin trafficking organization. (ECF No. 495, p. 7). Investigators learned that the heroin was trafficked from Philadelphia to Pittsburgh where it was then distributed. (ECF No. 495, pp. 11-12). In April of 2019, a search and seizure warrant was executed on a Ford Expedition and fifty bricks of suspected heroin, eight rounds of .45 caliber ammunition, and indicia for McHenry was recovered. (ECF No. 495, pp. 17-18). Immediately thereafter, McHenry was intercepted speaking with his girlfriend asking if the vehicle had been towed and stating, "he had shit in there." (ECF No. 495, p. 18). McHenry was arrested on July 18, 2019, with approximately five bricks of heroin. (ECF No. 495, pp. 18-19). A .45 caliber handgun was recovered from the backyard of residence where he was present on October 24, 2019, as well as one brick of heroin on the floor inside the house near the toilet, multiple bundles floating in the toilet, and four iPhones. (ECF No. 495, pp. 19-21). $1,000.00 was recovered from McHenry's person. (ECF No. 495, p. 27). Search warrants were served on other members of the drug trafficking conspiracy that day, and significant amounts of heroin were recovered along with other contraband, including firearms and ammunition. (ECF No. 495, pp. 21-24).

McHenry believes Magistrate Judge Dodge erred in her assessment of the nature and circumstances of the offense charged because there was no evidence that he committed any acts of violence. (ECF No. 478, pp. 3-4). That is beside the point as there is significant evidence that

---

rather, it is carefully reviewing the evidence to determine whether the weight of the evidence and the nature of the offense support detention.

5

McHenry was involved in the offense charged at Counts 1 of the Indictment - conspiracy to distribute and possess with the intent to distribute one kilogram or more of heroin - and the weight of the evidence appears strong. There is no question that the offense charged is very serious. Thus, the first two factors favor pretrial detention.

Next, the Court considers McHenry's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" under § 3142(g)(3)(A). The Court is aware of the fact that McHenry is in good physical and mental health. (ECF No. 495, p. 28). McHenry, who has lived his entire life on the North Side of Pittsburgh, lived with his aunt, Lakesha Lowry, at the time of his arrest and has strong family support. (ECF No. 495, pp. 28-29). He has two sons and a daughter who live with their respective mothers. He is involved in his children's lives and assists them financially. (ECF No. 495, p. 29). McHenry has not been employed in a year and a half and does not appear to ever have had steady employment, but "insists he enjoys physical work" and posits that he could find employment as a "laborer." (ECF No. 495, pp. 29, 36). Yet, he has offered no specific plan to the Court for financial support or steady employment.

McHenry is a recidivist drug trafficker. (ECF No. 483, pp. 2-3). He had a pending felony narcotics case as well as an access device fraud case in separate jurisdictions when arrested on the instant charge. Despite the pending cases and the fact that he was on probation for felony drug trafficking offenses, he was caught trafficking heroin and charged in the instant drug trafficking conspiracy. The Government has drawn the Court's attention to the fact that "Defendant is a recidivist drug trafficker who likely qualifies as a career offender, which significantly increases his advisory Guideline range if convicted." (ECF No. 483, p. 3).

McHenry's criminal record reveals that he has a history of committing offenses while on either probation, pretrial supervision, or parole. (ECF No. 495, pp. 29-30).

To the extent that McHenry believes his lifelong marijuana usage should be considered by the Court, his alleged addiction does not negate his criminal history. McHenry's personal drug use is separate from his trafficking illegal drugs. The charged offense is not the first time McHenry has trafficked illegal drugs. The Court rejects any argument from McHenry that is only a danger to the community if he is personally using marijuana.

It is particularly concerning to the Court that the alleged criminal conduct herein occurred while McHenry was on probation for drug trafficking crimes as well facing pending drug trafficking crimes. There is no doubt that he has a pattern of violating terms of release and/or supervision as well as possessing and/or distributing drugs. The Court believes that supervision in the form of probation, parole and intermediate punishment has not previously acted as a deterrent for McHenry. He had numerous violations and failed to comply with conditions of supervision. The Court finds little reason to accept McHenry's contention that his behavior going forward would be different. He has offered no credible evidence that he would not return to drug trafficking if released on bond.

Furthermore, the Court rejects McHenry's aunt, Ms. Lowry, as his third-party custodian as well as her residence as a place for home detention and electronic monitoring. This release plan would simply restore the *status quo ante*. McHenry was living with her at the time of his arrest. If the past is prologue, her supervision would likely be inadequate to protect the public, and home detention and electronic monitoring do not meaningfully change the equation.

Lastly, there is no evidence that McHenry's medical needs are not being addressed at the ACJ or that he is receiving substandard medical care. Speculation concerning possible future

medical conditions, like acquiring the COVID-19 virus, does not constitute a viable reason for pretrial release. McHenry's situation is similar to many other ACJ inmates. The ACJ has taken adequate precautions to mitigate, minimize, and further prevent the spread of the COVID-19 virus.

Consequently, after considering all of McHenry's history and characteristics, the Court holds that this factor weighs strongly in favor of detention.

The last factor for consideration by the Court involves McHenry's risk of non-appearance and the seriousness of potential harm to any persons or the community. 18 U.S.C. § 3142(g). There is no doubt that drug trafficking poses a substantial harm of the community. *See Perry*, 788 F.2d at 111 (danger to community arises from the likelihood that the defendant will, if released, commit one of the proscribed federal offenses). *Cf. United States v. Strong*, 775 F.2d 504, 507 (3d Cir.1985) (statutory language unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community). Ultimately, the Court must predict pretrial recidivism if McHenry is released pending trial. The danger to the community is the likelihood that McHenry will, if released, traffic in illicit drugs. Strict conditions of release, including home confinement and electronic monitoring, cannot guarantee that McHenry will no longer engage in criminal activity. McHenry has failed to assuage the Court's concern about him imperiling the community, particularly considering his history of violating terms of release and/or supervision and trafficking illegal substances. Consequently, the last factor weighs strongly in favor of detention.

Although the Court firmly believes that McHenry failed to rebut the initial presumption of detention, the Court nevertheless considered all of the factors under 18 U.S.C. § 3142(g). The

record before it provides clear and convincing evidence that McHenry would pose a danger of the community if released. McHenry must be detained pending trial.

### CONCLUSION

The Court holds that McHenry has not met his burden to rebut the applicable presumption of detention under 18 U.S.C. § 3142(e)(3). The evidence proffered by McHenry is simply insufficient to meet his burden, however low, of rebutting the presumption against pretrial detention. Rather, the evidence leads the Court to conclude that, if released, he would pose a risk to the community. Even if McHenry had met his burden, the Court would still find detention appropriate. The Court's probing examination of the record and the factors under 18 U.S.C. § 3142(g) leads it to conclude that the Government established by clear and convincing evidence that McHenry is a danger to the community. Pretrial detention is more than appropriate and Magistrate Judge Dodge's detention order will remain in place. An Order of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: June 9, 2020